All right, Mr. Mitchell, we're ready when you are. Good morning, Mr. Chief Judge, your honors, may it please the court, my name is Greg Mitchell, I'm counsel for the appellant John Gidner. The crux of this case is very simple. Mr. Gidner was statutorily entitled to a hearing under 28 U.S.C. section 3205c5 but was not granted one. The purpose of this statute is to protect the debtor. The effect of the government's arguments would instead exploit the debtor and leave the debtor with no legal remedy for a wrongful garnishment. The case at bar arises from a crime committed by Mr. Gidner's wife, Ms. Engelman, prior to their marriage. Part of her sentence was a restitution fine that the government sought to assess against Mr. Gidner's property after their marriage, property he believes to be separate property under Texas law. Mr. Gidner sought a hearing to prove the characterization of the property as separate property but his request was summarily denied and a final order of garnishment was issued. The judgment of the trial court, therefore, in this matter should be reversed. The final order of garnishment quashed and the case remanded for the mandatory hearing under section 3205 for the following three reasons. Number one, Mr. Gidner was indeed objecting to the garnishee's answer and so therefore correctly requested a hearing under section 3205. Second, Mr. Gidner correctly stated the grounds for his objection in writing. The hearing is where he would have properly carried the burden of proof. And finally, third, simply put, shall means shall and therefore the statute service requirement is not a prerequisite for the mandatory hearing requirement. What's the level of specificity required for the objection to fully envelop the answer? Well, Your Honor, I would submit that the bar is relatively low. The statute simply says the party objecting shall state the grounds for the objection. Mr. Gidner listed in the objection that was filed that he objected to the garnishment based on the fact that he believed the property was separate property under Texas law. That's all he listed. I don't believe that there's any sort of summary judgment type proof requirement that's specifically laid out in the Federal Rules of Civil Procedure. It simply says that and so I think that adding to that, if Congress intended for it to be more stringent than that, I think they would have put in more specificity as they do with a summary judgment type level of proof. It seemed to me from looking at the record and the briefs that the writ of garnishment said to the banks, just tell us all the property you have. Then when the judge issued, I guess, the order garnishing the property, she reduced the property of the bank to a half, but I believe that Mr. Gidner wanted a chance to argue that 100 percent of the property was not subject to seizure or garnishment because it was his separate property under his separate management. Is that correct? Have I read that correctly? Well, I think that's close. I think his primary argument was that the property was actually separate property. But apparently under some situations, even if it's separate, there can be garnishment a part of it, I believe, based on Texas law, but as I got into those things, I thought, well, I guess that's what he would have wanted to explain at the hearing and get into what Texas law is. Right, exactly. My brief didn't go into a whole lot of detail about that because of that very reason. I feel like that if the court were to agree, I think the appropriate forum for those arguments is on remand at the trial court level. Shouldn't there be some kind of facet showing that it's separate property and not subject to garnishment? I mean, you just file an essay, I want a hearing, and the judge says, why should I drag everybody down here if there's not any kind of a colorable argument that it is, in fact, separate property? Well, I guess I would start by pointing back to the statute, that the statute doesn't add those requirements. All right. Let's say harmless error on our end. Is there anything in the record that shows us that there's a colorable argument that the funds in these accounts were separate property? Other than just the argument that it is, I don't know that there is, but I would simply respectfully suggest that the statute doesn't require that. The statute simply says, state the grounds, therefore. It doesn't say prove it, and I think under normal motion practice, that's what happens. Movement files a motion stating general grounds. The respondent files a response stating general grounds why they object, and then it's the hearing where both sides put on their evidence. Typically, at least money in a bank account, under Texas law, is presumed to be community. If you are claiming it's separate, you need to say, well, no, it's not, because I just sold a piece of real estate that was separate property, and these are funds, and I can trace them. As a practical matter, we shouldn't say, I don't think, just because you say in a pleading it's separate property period, that the court has no discretion at all to do anything other than have a face-to-face hearing in court. I do believe that Mr. Gidner, in this case, did specify the argument, and certainly in a general fashion, that it was separate property as retirement funds. I think retirement funds was specifically mentioned. That's one thing, but in a checking account or savings account, it's harder to argue that, isn't it? I agree, and I think the focus of our argument was the retirement funds, as opposed to the checking account, which there's an argument, but I think it was certainly not as strong of an argument as the retirement funds. There's something about this that's not as clear as you want to make it. Due respect to a colleague to the left, these district judges are not asleep at the wheel. Judge Ball is very able, and handles her docket, and knows what's here, and is not unwilling to have a hearing, and so on and so forth. When I look at it, not that any judge is infallible, that error can't be made, but having been a trial judge myself, there are times when this is just not zeroing in, when somebody's just saying, just because, I'm entitled to it. If, as Judge Owen is saying, something more than here's the statute, I'm entitled to it, give it to me. No showing whatsoever that that's not an exercise in futility. It is, you say, well, the statute doesn't say any more specificity, but if you're standing up there at the judge, you want to crank up a hearing, surely it's not the case. We're going to say, take it out of this context. I can think of a lot of contexts where a hearing, quote-unquote, might ordinarily be the case, but a judge is going to want to know, okay, what are we going to do at the hearing? What are you putting on? Are you having an expert? What's the showing you want to make? Something beyond just, okay, here's Rule 65 that says you've got a hearing, but I guess more to the real point is that even if, we say, assuming without deciding that it was error for the district court not to grant the hearing, that no showing is made that there was any harm done, because no colloquial claim is made here, nothing is pointed to us in the record to indicate, other than just the emptiness of making the judge have the hearing, of what in the world would be produced. It's not enough to just say, there's a statute, read it, you follow what I'm saying? Even if we agree with you, I'm just not saying I do, but even if we agree with you, the better practice would be to have the hearing, or yes, facially, it's there. Don't you have some requirement of articulating a principle basis for the hearing, what's shown? I understand in the matter of trial strategy, people don't want to show their cards and pull all the stops, and that's not the guts of my point of, I've got to unfold all . . . who's going to testify on that side, but something beyond just, I get a hearing, judge, give it to me. You don't give it to me, I'm going to the Fifth Circuit and get you reversed. You follow the tenor of my question? I understand your Honor's point, and certainly there's got to be some level of judicial discretion. Judge Boyle's court is like any other federal district court, they have a large docket, and certainly their time is valuable. I guess I would start simply with the language of the statute, from my perspective, doesn't give a lot of discretion, and certainly there are statutes, I think it's 3013, that gives a district court kind of general discretion. But it seems to me that the explicit language of the statute would kind of trump that general discretion . . . At this point, he said, assuming without deciding, that we say, yes, a hearing was required, we are now on appeal, and we've got to have some harm shown for us to reverse and send back. I think the harm, and I think there is sufficient evidence in the record, from a standpoint of the communications that went on between the debtor and the U.S. Attorney's Office, the harm is that we've got at least $80,000 that is Mr. Gidner's retirement funds that he was planning on living on for the rest of his life. So I mean, certainly not suggesting that the district court was asleep at the wheel, but I think it's at least possible that in a rush to manage a docket, and I think if you look at the very first order that Judge Boyle issued, it was very summary in its finding that, well, Mr. Gidner didn't prove his case. And so I think that certainly is too far, because I think the statute doesn't say that he has to prove his case. What that level of proof is, it's certainly arguable that I would have a better, stronger case standing here today if he had given a little more substance. But I think I would go back to the purpose of the statute being to protect the debtor. I think the trial court and this court would want to be on the side of interpreting the statute shall mean shall. And to the extent that there's any conflicting authority out there, I think if it went up to a higher level, I would certainly want to be on the side of interpreting shall mean shall. What is in the record that indicates these funds were separate property retirement funds? There may be additional, but the ones that, the evidence that comes to mind, I believe it's pages 166 through 168 of the record. It may go on to 171. There's communications that occurred between the debtor and the U.S. Attorney's Office that were filed. Now, the U.S. Attorney has an opinion regarding the propriety of these communications being in the record, but nevertheless, they are in the record and they weren't confidential in any way. Ms. Engelman took a lot of information regarding the retirement funds and filed it with the court. And it's in the court's record, but specifically there's these communications that are in those pages where the U.S. Attorney actually seems to indicate, there's nothing absolutely definitive, but seems to indicate that they agree that the funds are retirement funds. In one communication it talks about some $3,000 that was arguable and they wanted a response and previous counsel for appellant provided that response and subsequent communication indicated that the U.S. Attorney even agreed with that, but it was only subsequent to that that changed their mind, filed a motion to get a final writ of garnishment and the garnishment was issued. So, I think there is evidence in the record. Nothing else is coming to mind immediately, but I think those communications certainly indicate that. Retirement funds are community property in Texas unless they're separate funds, right? My reading of Texas law is that retirement funds that were, they are, to the extent that they were earned prior to the marriage, which all of these retirement funds were, were separate, those were separate properties. So, is there evidence that some of this was earned prior to the marriage? Only the communications that suggest that the U.S. Attorney agreed. There was a lot of the actual statements that indicate that they were, that the funds were there and I think the statements go back several years and what you see in the statements is that nothing has changed. And I think in one of the U.S. Attorney's briefs it made the argument that, well, any property that's added to retirement funds after the fact are community property and can be divisible on divorce. But that if you follow, and it's certainly, there has to be a little bit of reading into the documents because it doesn't ever specifically say that nothing was added, but by looking at the balances and seeing that the balances don't change or that the only change in the balances are fluctuations based on the market in what the funds were invested in, you see that nothing has been added since the, since the marriage of Mr. Gidner with Ms. Engelman. Was there anything in the record, I think earlier in the case there had been a motion to quash the subpoena to the bank. Were those documents in the record? I just don't remember offhand. I believe the documents were. I have the record on my computer and I can try and respond on rebuttal, but I'm pretty certain that there were documents related to the motion to quash, but I think the communications that went back and forth suggested that Mr. Gidner, although he attempted to, never actually filed it with the court. I think what he did is he mailed it to the U.S. Attorney's Office, didn't send it to the clerk. So I believe that certainly the court could have interpreted that as a filing and treated that as a filing. It did not and that is not the primary focus of our arguments, but nevertheless there was at least an attempt made to respond to the initial writ of garnishment. But again, we would argue that the 3205 is broad enough to encompass any argument with respect to the garnishment. I would refer the court to the Crowther case that's in my brief that was out of another district court in the Northern District of Texas, in which Judge Godbee specifically found that an answer filed after the answer was still valid. In that case, the debtor was attempting to make an argument that they couldn't afford to pay the garnishment and the court looked at Section 3202D, which is the section that allows you to object after the initial writ of garnishment, and realized that that section is very limited in the objections that you can make. And it went on to find specifically that although 3202D is limited, 3205 is not so limited and that it can pretty much allow for any objection, including an objection that's limited to the garnishing. And of course, our argument is that the objection was not, you know, it was in fact to the garnishing answer because he had no reason to believe that he had to object until he saw the garnishing's answer, which suggested that his retirement funds were subject to the writ. So I see that I'm out of time. Thank you. You preserve your rebuttal time. Thank you, Judge. All right. State. May it please the Court. Good morning, Your Honors. I'm Megan Fahy, appearing on behalf of the United States of America. This case… Can I have the case below? Yes, Your Honor. I have been involved with this case prior to the garnishment, through the bankruptcy, and the entire time, Your Honor. Good. Keep the proceed. This case is essentially about the ability of a trial court to control its own docket and whether or not it abused its discretion in properly denying Mr. Gidner's hearing request and properly adjudicated the issues pending before it when Mr. Gidner failed to request a Section 3202D hearing, failed to file a motion to quash writs of garnishment, failed to file any other motions, evidence, or briefing at any time to put the issues properly before the Court, and failed to comply with the statutory requirements contained within Section 3205C5 itself. There are effectively three interrelated issues on appeal in this case. One is whether or not the trial court abused its discretion in denying Mr. Gidner's Section 3205C5 hearing request, whether or not Mr. Gidner waived his right to put the Mr. Gidner's due process rights were violated in this case. At the heart of this case is effectively the Section 3205C5 hearing. And to fully understand this statute, it's important to understand its statutory framework. It's one of two hearings that may be held in post-judgment garnishment actions in which the United States is enforcing debt owed to it. The other statute being Section 3202D, it's a statute that's permitted. It's a hearing that a party who's objecting to the government's seizure of assets can claim in any of the Subchapter C post-judgment enforcement actions. It's limited to certain issues that may be heard at the hearing, including... Yes, Your Honor? Are you arguing that the objection that Mr. Gidner made could have been raised under 3202D? Yes, Your Honor. Under what section? It's Section 3202D. And really, his appellate brief hits the argument that he should have been making at the trial court. It's in paragraph 61 to 63 on page 36 of his brief. His argument was that the United States seized his separate property, thereby not complying with the statutory requirements for the issuance of a writ of garnishment, which is one of the requirements in Section 3205A. So, when I read 3202D, I see the probable validity of a claim for exemption, and then there's a specific list of exemptions, and this doesn't fit. That's correct. That's not been raised as an issue in this case. And then three is certain issues regarding default judgments. That's not applicable. The second is failure to comply with statutory requirements for the issuance of a writ. So, what statutory requirements? That would be under 28 U.S.C. Section 3205A, that the United States is able to seize property in which the debtor has a substantial non-exempt interest. How does the debtor know, somebody like Mr. Gidner, know what's being seized until they see the answer? There may not be any objection. Maybe they came back and said, no, we have no property in which Mrs. Gidner had a substantial interest. Then Mr. Gidner would have been perfectly satisfied with that. He would have had no reason to object. So, how does he know what's going to be in the answer as being represented to be the debtor having a substantial interest until he sees the answer? Well, Your Honor, when he's served with a garnishment paperwork, which is required to be served on any interested party as well as the judgment debtor, he understands which institutions and which garnishes are at issue. And at that point in time, he can understand what the potential arguments are. But in addition, in this particular case, when he actually received the garnishes answers prior to receiving the garnishment paperwork, in fact, when the judge denied a C-5 hearing request, he still had 16 days to request a Section 3202D hearing. And there's always the opportunity for the court to entertain a motion to reconsider because he was substantially prejudiced because he wasn't aware of the information. He made the substantive arguments. He just didn't use the right numbers, right? He didn't use the correct procedural mechanisms to put it in front of the court. He objected. He put the grounds in. And you're saying if he just said 3202D instead of 3205C, it would have been okay? He could have held a hearing, but it also goes back to what the court was referring to earlier, clearly explaining the objection and providing a reason for the court to hold a hearing. Well, didn't he say, I think you're going after my separate property. Why isn't that enough? Because he never put any evidence before the court. I don't see any requirement in that rule that you have to put evidence in your objection. No, that's correct, Your Honor. But what he didn't do is, all he requested was the C-5 hearing. When he appeared in this case, he effectively said three things. One, I want a section 3205C-5 hearing. Two, I don't owe any money to the government. It's my wife's debt. And three, I object because it's my separate property. The court correctly determined had the ability to deny the C-5 hearing request. Why? Because he failed to comply with the statutory requirements. My question is, if he had said 3202D instead of 3205, would that have been sufficient? Would what he put in that objection have been sufficient? Yes, Your Honor. But that's not what he did. And all the court had before it was a section 3205C-5 hearing request, with improper grounds stated that go beyond the scope of a C-5 hearing. Are there any cases that say that this kind of objection to the separate or community nature of property should be under a 3202D hearing? No, Your Honor. Not that I'm aware of. Is there evidence in this record that these retirement funds or part of them are his separate property? No, Your Honor. There's been no evidence at any point in this case presented, even in the motion for new trial or anywhere else that would trace this money or give any colorable claim that this is separate property. The only thing that Mr. Gidner has cited were those email communications where after Mr. Gidner's C-5 hearing request was denied, the government and Mr. Gidner's counsel at that time attempted to communicate and the government was receiving quite a lot of additional records that it received that it did not have in addition to the subpoena and the requested documents the United States tried to obtain before starting the skarnishment action. And what the government did at that time was to create a money flow chart and try to go back and trace the assets that were seized back to the Merrill Lynch account that Mr. Gidner says was what was actually seized. And those email communications, I think Mr. Gidner has misinterpreted what they meant. They're taken out of context. They're cherry-picked communications. They're referencing documents that are not a part of the record on appeal. They were attached in about 120 pages from a letter Ms. Gidner sent to counsel for the government. And it was inserted behind medical records and police reports and some other financial records. And this statement about I'm okay with the $3,000 or the email says something to that effect really meant that the government at that time was tracing the seized accounts back to a certain period of time and a $3,000 unexplained cash deposit came in. At that point in time, counsel for the government asked Mr. Gidner's attorney to explain that and said, okay, so we've seized it. That came from a separate property source. But at no time did that email ever reference the fact that the accounts that it issued and how far the tracing had been had actually gone all the way back to Mr. Gidner's premarital assets. Weren't there copies of some statements in those records, though, that had dates on them prior to his marriage? Yes, and those were Merrill Lynch accounts. And what was seized in this case were Raymond James and J.P. Morgan. And what the government at that time was trying to do was trace them back through the cash outs and the reinvestments and the property that he earned after marriage versus property he had before marriage. And the United States was never able to clearly trace it back there. But isn't that what would have happened at a hearing? Yes, Your Honor, which is what the government was trying to do rather than running up unnecessary legal expenses on Mr. Gidner or wasting the court's time. If Mr. Gidner had evidence that could trace it back to show the separate property, the United States would have been willing to quash the writ of garnishment. Well, I guess, though, that's the difference between, you know, settlement negotiations and something actually being presented in court. Yes, Your Honor. If his objection had said 3202D instead of 3205C, what would the district court have been required to do? I think if there is an issue that's properly presented to the district court and the court needs the hearing to take the evidence to decide the issue,  would simply saying, I think this is my separate property, would that trigger a right to hearing? No, Your Honor, because he didn't request the C-5 hearing and he didn't provide the checkbox for him. This isn't just an inadvertent mistake about the type of hearing request because Mr. Gidner, throughout this case, has remained steadfast that he did not want a section 3202D hearing. Why? Why would he do that? I'm not sure, Your Honor, but even in the briefing for the motion for new trial that the court ordered, Mr. Gidner chastised the government for even raising the 3202D issue. I'm not sure what his reasons for that were. But this, all the district court had before was a C-5 hearing request that didn't comply with the statutory requirements, an objection that goes beyond the scope of a 3205C-5 hearing. Why do you think it didn't comply with the 3205C statutory requirements? Why didn't the hearing request comply with 3205C? For the reasons stated in the district court's order. One, really, the C-5 hearing request is to address a creature of the garnishment statute, which is the C-4 garnishes answer. The C-5 hearing is not contained within any of the other post-judgment enforcement actions. So the court found that it didn't actually object to an answer. It's not objecting to the information provided by the garnishee. It's really objecting to the root of garnishment itself. It failed to state valid grounds for the hearing, and it didn't serve the garnishee. At issue in this case is a lot of what is the scope of a C-5 hearing request, and there's no appellate court authority on point. And there are a number of district court cases that cover the wide spectrum of what a C-5 hearing is. And in this case, the district court got it right to give full meaning to the statutory context to C-5 hearing, only pertains to the garnishee's answer, because the statute itself says the hearing is objections to answer, and then it also requires the defendant to file written objections to the answer, and also requires them to serve the garnishee, which is not a requirement of the 3202D hearing. The Crowther opinion out of the Northern District of Texas is on the opposite end of the spectrum. The court got it wrong in that case, not only for the reasons stated in this district court's opinion, given the statutory context within C-5, but also because it's illogical to believe that a third-party claimant's or a judgment debtor's rights to hearing and the procedural mechanisms available to them is dependent on the mechanism, the post-judgment enforcement mechanism that the government chooses. In this case, instead of doing a garnishment action and going out and seizing Mr. Gidner's retirement account, serving the garnishee, freezing it, letting them file an answer, and letting all the parties adjudicate the issues, and then doing the final disposition order, the government could have sent the marshals out and immediately executed under Section 3203 of the FDC pay, and immediately taken possession of the property, in which case there would be no C-5 hearing. The only avenue for relief would have been the 3202D hearing. In addition to that, in the Crowther case, the court actually misstates the statutory language on page 731 of the opinion. It says that they're required to file a written objection to the writ, and the statute actually says a written objection to the answer, and I believe that's probably what leads to a lot of the confusion about the scope of the C-5 hearing. In addition to that, in the Crowther case, it doesn't support Mr. Gidner's argument as well, because the court found that when the defendant failed to comply with the C-5 requirements, that it was a fatal flaw, and the C-5 hearing couldn't have been held. Can I ask you a question? On the 3202D, back to your argument that this kind of objection is an objection to the statutory requirements for the issuance of a writ, is there any support for your argument? Is it in the comments? Is it legislative history, anything that would allow a debtor to know that that means if you want to object because it's your separate property, this is your chance to do it? No, Your Honor, but it's really the only procedural mechanism within the FDCPA  and also the motion to quash rates of garnishment, and it's also explained in the 3202B not directly with regard to this as a procedural mechanism for separate property, but it does say if you believe your property has been improperly seized, you need to request a hearing. In fact, it provides a checkbox form. Mr. Gidner's attorney was provided with a checkbox form that would have allowed that. And under Section 3202, it also states that requesting a hearing will allow them to file the motion to quash rates of garnishment. And that's effectively what Mr. Gidner should have done here is request the hearing and properly place the issue before the district court. When he failed to do all of that, the district court had the discretion to deny the hearing request and all that was left before the court when there were no other motions to quash affidavits, briefing at any point was just this unsubstantiated, I object because it's my separate property. And the district court, when that was all had before it under Texas law, it's clear that the property was presumptively community property, and then entered the final disposition order giving note to the fact that his retirement account is presumptively also his sole management community property subject to one-half garnishment. And we ask that the district court decision to deny the hearing request be affirmed and also the final order of garnishment also be affirmed. What's actually, what does the record actually consist of? I'm sorry, Your Honor? What does the record actually consist of? The record in this, most of the litigation in this case happened after the final order of garnishment. So what we have up to the final order of garnishment that's being appealed was the applications, the redacted application, it was redacted to so that Ms. Engelman's social security numbers wouldn't have been disclosed. The rates of garnishment, the orders for issuance, the proofs of service, and the answers of the garnishees disclosing Mr. Gidner's property interests and how the accounts were held. And then we have the, Ms. Gidner appeared in this case, she's not filed the appeal, and Mr. Gidner's objection and notice of appearance. And it was just the objection that said, I object, it's my separate property, I don't owe the debt, and I want a C-5 hearing. The emails were attached to a brief or somehow they, how did they get in the record? At some point during the process when the government was speaking to Mr. and Mrs. Gidner's attorney at the time, Ms. Gidner, per se, sent a letter to the government outlining financial hardships, and then attached a number of documents behind it. Back towards the end, maybe around pages 100, 110, these couple of emails and the money flow chart the government had created were inserted in there, but it was also CC'd to quite a number of people, including the court, and when the court got it, it went on to the docket. Well, sort of between, I don't know if I can necessarily say what all I'm thinking, because I'm trying to figure out whether there's an element of bad lawyering floating somewhere, or errant lawyering, so to speak. Sometimes happens when people are in an area of the law that they don't do all the time. Apparel, that strikes fear, it used to in me, I'm glad I don't have to do it now, but you're in an area you don't do all the time, so whether the artfulness of the request led to, let's just say technically, not hitting the right target, but on the other hand, sure doesn't sound like to me a long hearing. I mean, this is nothing but a few pieces of paper, you know, a practical matter in terms of hearing. Like I said, I probably shouldn't think out loud, but at any event, it's somewhere between here, between a gotcha situation, which we obviously sort of want to avoid, just to say gotcha, but I mean, the rules are what they are, the statute says what it says, et cetera, and part of the questions we've been asking is trying to get a beat on, you know, like, what's that issue? I mean, this is fairly routine, this is by no means the most complex issue we've had this week in terms of, you know, the pleadings, the filings, the record, what's here, et cetera. I mean, it's just really not, so we get an appeal in this matter over whether to say the statute says what it says, trial court, you're wrong, boom, versus even if that was an error, you know, what in the world is either in this record, which doesn't sound like much, or what's to come by just saying, okay, you're wrong, you should have had a hearing, but we acknowledge there's really nothing for you to hear, but go have this empty proceeding just because the statute said it. Some of that just doesn't seem quite, you follow me? Yes, I completely understand what you're saying, and the government is very sensitive to the fact that many of these attorneys are not practicing in this area of the law and are not familiar with it. I guess I was probing to see if the government was, you know, sometimes we're pro se litigants, you've got to help people a little bit, and that's why I asked you if you hounded from the beginning. I always love when we have the lawyer, who? It's me. All right. And I'm very sensitive to that, and we are very sensitive to not trying to play a game of gotcha with the attorneys, which is one of the reasons why we try to subpoena the information beforehand so we're not putting people through an unnecessary burden and expense. How hard is it to get the records to see whether this money existed before the marriage? Well, Your Honor, we did subpoena those records prior to the garnishment, and that's when Mr. Gidner filed a motion to quash, which didn't hit the court's docket, and then I sent the letters saying that it looks like you sent it to me instead of filing it with the court. Then Mr. Gidner went down to the court and actually got the agent that was in charge of this case on the phone, and they found out that the motion to quash, for some reason, just didn't get docketed properly, at which time we filed, sent the letter to the companies we were trying to subpoena saying, I guess what I'm saying, we filed briefs, we're here, y'all have pledged to come to New Orleans. Has anybody, before all this happened, gone back and said, show me your bank record? That's what the three months of litigation, I mean, the discussions between the denial of the hearing request to the final order was the government trying to do that. No one's offered a bank record? Y'all haven't? No, we've subpoenaed what we could from the records that we had beforehand. They showed that they were post-marital assets at that time. We couldn't trace them back. Even after the denial of the request, I was getting boxes of financial records dumped in my office, not with the tracing, which is what those emails are really about, is the money flow chart, with me trying to assist counsel with showing where the problems were. So the government's got the money now? The government has the money from J.P. Morgan, but the garnishee, Raymond James, is still holding Mr. Gidner's retirement accounts pending the outcome of this appeal. So the government has tried repeatedly, and given every opportunity. There's even been additional briefing in the motion for a new trial with the court. Does the government deny that some of this... Is it your testimony and all your experience with this case that you... It's your belief that none of this money was in a retirement account before the marriage? I couldn't trace it back, Your Honor. But you didn't have the documentation. Is that right? I had basically what I... Going back two years now from when I was looking at all these financial records, I had the documents that he had assets before marriage, and I have the documents where I'm trying to push them back and read them. You did see some with assets before the marriage. Yes, Your Honor. And you didn't take it from one to the other, but he had about $180,000 before marriage and about $180,000 after marriage. And if I recall, he had taken over $100,000 of money out of the accounts he'd been working, post-marriage, putting money into the account. I couldn't trace them or link them back. We're very sensitive to not trampling on people's rights just because they don't understand the law and the procedural mechanisms, but we just couldn't link it up in this case, which is why we filed the motion for final order of garnishment, and then all the litigation in the case ensued. Okay. All right. As always, we appreciate the candor from all lawyers, but especially from the government, so we can just be clear of what we have. I think if the case just kind of strikes all of us, even though we haven't conferred by it, just kind of one of these, it seems like two people across the table should or could have resolved something without there having to be some edict from the Fifth Circuit in terms of what the statute says, what it means, if, as a practical matter, it was discernible. Either he's got the proof or he doesn't, and the government gives up, but it sounds like all that's sort of not at play, but we appreciate the responses from both counsel candidly to help us kind of get a grasp at what's there, because my sensitivity in part is, even if we said, and I'm not sure we will, that it was there not to hear it, I still like to have some sense of what the hearing would be. I mean, I'm not comfortable in ordering something that's somewhat futile, so to speak, and in any event, counsel's gonna come back up on rebuttal, and he should have already perceived kind of what his burden is, so we thank you. Thank you, Your Honor. All right, Mr. Mitchell, we've asked a lot of questions, and we're not necessarily wanting to plow the ground, you know, that we went through initially, but the government says, you know, there were a lot of opportunities here and so forth to try to unearth this, and so you're still standing on, the statute says what it says? I do, Your Honor. If I may, real quick, in reference to Judge Morgan's question earlier,  you can find that at page 95 of the record. It was included as part of what Ms. Engelman supplied, so it is in there. Your Honor, the court spent a lot of time discussing with the appellee regarding evidence of separate property, and I would submit that that whole discussion kind of misses the point. I mean, the... It misses our point, I think. Have you all tried to work this out to the dispute resolution people here at the court? I mean, have you gone in with the government, laid your documents on the table, and said, look, this is my evidence, let's be done with this? We would welcome that opportunity, and my point wasn't missing the point. I mean, I think the hearing is where all of this stuff would have been flushed out. I mean, to the extent that the court finds that... What stuff? You know, it's not a matter of trying to make you pull out the joker or, you know, your trump card, but, you know, it's just a little ephemeral to say have a hearing and what's to prove. I mean, what's wrong with saying this is what I want to put on in the hearing, and if we're going to reverse the clock, what will you say? Okay, the statute says what it says, you know, a hearing to, you know, consider A, B, C, D, and E. I mean, this is your last sort of best shot, to be frank about it, and you keep saying, well, you know, we'll show this, we could show this. What is it you would show? I think what was attempting to be shown and the appellate counsel admitted this, that there was a showing of retirement fund records that had been transferred from Maryland. She said she could trace up to a point, she couldn't connect a dot to the other point. You heard her, all right? So do you have the evidence to connect the dots all the way? I believe that the dots are connected, and I think she had the evidence to connect the dots, because the rollovers were not that complicated. They went from Merrill Lynch to Raymond James, and they were retirement funds. There were no contributions to those retirement funds. It was the same money. She said there was $190,000, he took out $100,000, and he put more in. I would dispute that, and again, this is an argument that would have happened at the hearing, but I don't think, I don't think if, I mean, the reason that the record may be devoid of some of that evidence is because we didn't get a chance to have the hearing. I think those records would show that there. We heard you. I know, and I apologize. We heard you, but what you gotta hear is this. Tell me one, two, three, four. We say Judge Ball's gotta have a hearing. You tell me now, one, two, three, four. What are you putting on at the hearing, and what is the source of it? Documents from, that trace the money, from the time that he was, previous to his. Where are the documents? The documents are, I believe my client has them back now. I had them, but I have a whole suitcase full of documents that my client presented to me that have all of the historical records from the retirement funds. All right, so why haven't you just given those to Ms. Fahey to look at them? You think she's just gonna say, you don't have a hearing, I don't wanna see them? I believe they were. They were presented to Ms. Fahey, and this discussion that was ongoing, at least the way I read it, indicates that they were very near a resolution, and that the government actually agreed. But again, for whatever reason, there was a change of heart. You were not the lawyer below, is that right? That's correct. Okay. All right, I think we're at the bottom of it. All right, I mean, we've exhausted it, but not because, well, we've exhausted it because there are questions. There's something about this that's floating, but we have a duty, and we're gonna do it. I mean, we'll decide the case. It seems to me that a good settlement is better than an opinion from the Fifth Circuit in a context like this, but we've asked enough questions to flesh it out, and if that doesn't seem to bode well for the parties, then so let it be done. We'll decide the case and pour it out. It may or may not be the most favorable outcome, but we'll decide the case, and we'll move on. But we appreciate the candor of both sides, and the briefing in the case, and we'll get it done. Thank you, Judge. Thank you, sir. All right, before we take up the third case, the panel will stand.